```
                   UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF KENTUCKY
```
**SOUTHERN DIVISION at LONDON**

```
CONNIE PIERCE,                  )
                                )
     Plaintiff,                 )   Civil Action No. 6:07-247-JMH
                                )
v.                              )
                                )
MICHAEL J. ASTRUE,              )
COMMISSIONER OF SOCIAL          )   MEMORANDUM OPINION AND ORDER
SECURITY,                       )
                                )
     Defendant.                 )
                                )
```

                \*\*   \*\*   \*\*   \*\*   \*\*

This matter is before the Court upon cross-motions for summary judgment on the plaintiff's appeal of the Commissioner's denial of her application for Supplemental Security Income and Disability Insurance Benefits [Record Nos. 11, 12].[1]  Plaintiff Pierce has also filed a response in opposition to the Commissioner's Motion for Summary Judgment [Record No. 13].  The Court, having reviewed the record and being otherwise sufficiently advised, will deny the plaintiff's motion and grant the defendant's motion.

**I.   FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff filed for disability benefits on October 30, 2003, alleging an onset of disability of May 9, 2001, due to heart disease, depression, and anxiety.  [AR at 50-54.]  A hearing on her

---

[1] These are not traditional Rule 56 motions for summary judgment.  Rather, it is a procedural device by which the parties bring the administrative record before the Court.

application was conducted on September 21, 2005, and her application was subsequently denied by Administrative Law Judge ("ALJ") Baker on March 22, 2006. [AR at 15-25.] Plaintiff timely pursued and exhausted her administrative and judicial remedies, and this matter is ripe for review and properly before this Court under § 205(c) of the Social Security Act, 42 U.S.C. § 405(g). [*See* AR at 6-9, 11.]

Plaintiff was forty-five-years-old at the time of the final decision by the ALJ. [AR at 24.] She has a general equivalency diploma (GED) and no past relevant work experience. [*Id.*] Plaintiff has not worked since the date of the alleged onset of her disability. [AR at 17.]

During a agency consultative psychological examination with Syed Raza, M.D., on July 24, 2004, Plaintiff reported a history of anxiety and depression, dating back to 1997, that she was taking Paxil CR 25 mg and Provigil 400 mg as part of her treatment, that she "feels scared, has difficulty with concentration, fears dying and has some mood changes," and that she feels nervous when around others and has some avoidant behaviors. Dr. Raza noted that Plaintiff's ability to relate was positive but that she "responds to criticism with anger." Dr. Raza diagnosed Plaintiff with panic disorder and opined that she has a fair ability to understand and remember simple, as well as one and two step instructions, and fair social interaction skills. He found that she had a good ability to

2

sustain concentration and persistence for completing tasks in a normal amount of time, had good coping skills, and responded to pressure normally. Finally, he assigned a Global Assessment of Functioning (GAF) of 65-70 and stated that her impairment would likely last four to five years. [AR at 271-74.]

In an August 12, 2004, Mental Residual Functional Capacity Assessment, Jane F. Brake, Ph.D., a non-examining agency psychologist, found that Plaintiff had a panic disorder and concluded that her impairment is not severe. Dr. Brake noted a mild degree of limitation in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. Dr. Brake commented that she afforded Dr. Raza's opinion no weight because she felt that it was "not supported by the objective [and] medical evidence." [AR at 350-364.]

On August 19, 2005, Plaintiff underwent a consultative psychological evaluation with Robert Spangler, Ed.D., who noted that she "seemed socially confident but was mildly depressed and anxious." He found that she was capable of understanding directions and demonstrated good concentration but that she was "emotionally labile when stressed." Based on her scores on the WAIS-III and the WRAT-3, Dr. Spangler opined that she "appears to be functioning in the low-average range of intelligence." He diagnosed Plaintiff with Anxiety Disorder, NOS, and Depressive

Disorder, NOS, noting that both impairments were mild to moderate with medication. He assigned her a GAF of 55-60 and concluded that her ability to deal with the public and work stress, understand, remember, and carry out complex job instructions, behave in an emotionally stable manner, relate predictably in social situations, and to demonstrate reliability was fair. [AR at 385-94.] Fair was defined on the form used as "seriously limited but not precluded" on the assessment form used by Dr. Spangler. [*Id.*]

Following the administrative hearing, ALJ Barker submitted interrogatories to a Vocational Expert (VE), asking him or her to assume the following hypothetical situation:

> . . . the claimant's demonstrated impairments reflect a residual functional capacity to perform work that does not require lifting or carrying more than 50 pounds frequently; more than occasional bending or squatting; more than frequent above shoulder level; any climbing; or exposure to heights or dangerous/moving machinery. In addition, the claimant is of borderline intellectual functioning, but she retains the residual functional capacity to perform work that involves only routine, simple and non-detailed tasks; where public and co-worker contact is casual and infrequent; where supervision is direct and non-confrontational; and, where changes in the workforce are infrequent and gradually introduced.

[AR at 106-107.]  In response, the VE eliminated Plaintiff's prior employment, consisting of (1) a sewing machine operator (light exertion), (2) bakery worker (light exertion), (3) day care worker (medium exertion), (4) bagger (medium exertion), and (5)

4

self service station attendant (medium exertion). The VE opined that such an individual would be able to perform jobs including car washer, packer, assembler, and janitor. [AR at 107-08.]

On March 22, 2006, the ALJ made the following findings of fact in determining that Plaintiff was not entitled to disability benefits:

> 1. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.920(b)).
>
> 2. The claimant has the following severe impairments: narcolepsy, mild obstructive sleep apnea, restless leg syndrome, chronic obstructive pulmonary disease, coronary artery disease, status-post angioplasty, panic disorder, anxiety disorder – not otherwise specified – mild to moderate, depressive disorder – not otherwise specified – mild to moderate; a history of excessive daytime somnolence, deviated septum, asthmatic bronchitis, shortness of breath, hypertension, dyslipidemia, possible panic disorder; and complaints of sleep disturbances (20 CFR 416.902(c)).
>
> 3. The claimant does not have any impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1, nor does she allege that they do so (20 CFR 416.902(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to occasionally lift and/or carry up to 50 pounds or up to 25 pounds on a frequent basis; sit up to six hours during an 8-hour workday; and stand and/or walk for brief periods of time or up to six hours during an 8-hour workday. She would be able to occasionally climb ramps or stairs, but should never attempt to climb ladders/ropes/scaffolds. She should avoid concentrated exposure to extreme cold/heat; and should avoid hazardous machinery or dangerous heights. She would be limited to work that involves only simple, non-detailed tasks, where public and coworker contact is casual and infrequent, where supervision is direct and

non-confrontational, and changes in the workforce are infrequent and gradually introduced.

5. The claimant has no past relevant work history (20 CFR 416.965).

6. The claimant was born on August 17, 1960 and was 33 years old on the alleged disability onset date, which is defined as a younger individual age 18-44. She is currently 45 years of age, also defined as a younger individual(20 CFR 416.963).

7. The claimant has a general equivalency diploma and is able to communicate in English (20 CFR § 416.964).

8. Transferability of job skills is not an issue because the claimant does not have a past relevant work history (20 CFR § 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

10. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(g)).

[AR at 15-25.]

## II. OVERVIEW OF THE PROCESS

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is

>    listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.
>
>    4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.
>
>    5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health and Human Services*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 CFR § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

### III. STANDARD OF REVIEW

In reviewing the ALJ's decision to deny disability benefits, the Court may not try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility. *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g), *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001), and whether the ALJ employed the

proper legal standards in reaching his conclusion, *see Landsaw v. Sec'y of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence" is "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286.

**IV. ANALYSIS**

As an initial matter, the Court notes that Plaintiff does not challenge the ALJ's finding with regard to the severity of her impairments or that her impairment or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Nor does Plaintiff challenge the ALJ's finding that she has the physical capacity for a limited range of medium work. Rather, Plaintiff argues that the ALJ erred in determining her mental residual functional capacity (hereinafter, "RFC"), improperly rejecting the opinion of her consultative psychological examiner, Dr. Robert Spangler, and, thus, making inadequate findings as to her mental limitations. In turn, Plaintiff argues that the ALJ improperly characterized her mental limitations to the VE.

In considering a disability claim, it is true that not all doctor's opinions are considered equally. An ALJ should afford different weights to the opinions of physicians, examining and consulting, during his or her review of a claim:

8

>When evaluating medical opinions, the SSA will generally "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined" her. [20 C.F.R.] § 404.1527(d)(1). The SSA will give the most weight "to opinions from [the claimant's] treating sources, since these sources are likely to be medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)...." *Id.* § 404.1527(d)(2). The SSA promises claimants that it "will always give good reasons in [its] notice of determination or decision for the weight [it gives the claimant's] treating source's opinion." *Id.*

*Smith v. Commissioner of Social Sec.*, 482 F.3d 873, 875 (6th Cir. 2007); *accord Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544-46 (6th Cir. 2004).[2]

In determining a claimant's RFC:

>[u]nless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 CFR §§ 404.1527(f)(2), (f)(2)(I). Much as with the "reason giving" required in § 404.1527(d)(2), the requirement of an explanation as to the weight given an opinion applies only to

---

[2] Plaintiff asserts that *Wilson* teaches that an ALJ must articulate good reasons for not crediting the opinion of an *examining* source. This is simply not the case.

9

situations were the opinion of a non-treating physician or psychologist is given precedence over the opinion of a treating physician. *See Smith*, 482 F.3d at 875-76 (6th Cir. 2007).

Plaintiff concedes that Dr. Spangler is not a treating source. [Record No. 13 at 4.] This is to say that the ALJ was under no particular obligation to articulate a reason for rejecting Dr. Spangler's assessment of serious mental limitations in determining her RFC and that he did not err on these grounds. That said, having reviewed the materials in the record of this matter, the Court disagrees with Plaintiff's argument that the ALJ adopted a mental RFC which is not reflective of any mental health source which is of record in this matter. Indeed, to the extent that the ALJ's declined to accept Dr. Spangler's assessment of "serious" limitations as his own and, instead, found an RFC with milder limitations, his decision is supported by substantial evidence of record.[3]

Dr. Spangler assessed that certain of Plaintiff's abilities to adjust to employment were "fair" or, as that term was defined on the medical assessment that he completed, "ability to function in

---

[3] Further, under 20 C.F.R. § 404.1527(e)(2), the "final responsibility for deciding [the issue of residual functional capacity" is reserved to the Commissioner[,]" and no "special significance [will be given] to the source of an opinion reserved to the Commissioner" under paragraph (e)(2). 20 C.F.R. § 404.1527(e)(2)-(3). It follows that the ALJ was under no obligation to give special weight to the opinions of Dr. Spangler with regard to the RFC.

10

this area is seriously limited, but not precluded." Commenting on this very language, the Sixth Circuit Court of Appeals has noted that:

> . . . the word "fair" is both a measure of ability and disability. It is on the balance between poor ability to function and greater ability to function. A physician's use of the term "fair" does not, on its own, declare that the claimant is markedly impaired. Rather, the term "fair" requires a review of the entire record in order to judge whether the balance tips toward functional ability or toward disability.

*Colvin v. Barnhart*, 475 F.3d 727, 731 (6th Cir. 2007) (*quoting Cantrell v. Apfel*, 231 F.3d 1103, 1107-08 (8th Cir. 2000)). Ultimately, the ALJ conducted just such a review in this matter, determining – in not so many words – that the record evidence tipped the balance toward functional ability for Plaintiff, not toward disability.

Indeed, substantial evidence of record supports this conclusion. Dr. Spangler found that Plaintiff's "general activity level was age . . . and task appropriate[,]" that she was only "mildly" depressed, "generally understood the directions and demonstrated good concentration[,]" had adequate recall, was "cooperative, compliant, and forthcoming," adequately interpreted common proverbs, did not manifest any loose or illogical language, and had adequate social skills." [AR at 385 and 387.] He noted no particular limitations in her activities of daily living. [AR at 387.] Dr. Spangler did assess that Plaintiff had only a fair

11

ability to deal with the public and work stresses; understand, remember, and carry out complex job instructions; behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. [AR at 392-93.] He also opined that she had a "good," i.e., "limited but satisfactory," ability to follow work rules, relate to co-workers, use judgment with the public, interact with supervisors, function independently, and maintain attention and concentration. [*Id.*] He assessed her ability to understand, remember, and carry out "detailed, but not complex, job instructions" as "good," and her ability to follow simple job instructions as unlimited or very good, i.e., "more than satisfactory." [*Id.*] She had a "good" ability to maintain her personal appearance. [AR at 393.]

While Dr. Spangler assigned GAF scores in the "moderate" range (55-60), Dr. Raza assigned a GAF of 65-70, indicating mild symptoms. [AR at 274, 388]. Dr. Raza opined that Plaintiff has a fair ability to understand and remember simple, as well as one and two step instructions, and had fair social interaction skills. [AR at 274.] He found that she had a good ability to sustain concentration and persistence for completing tasks in a normal amount of time, had good coping skills, and responded to pressure normally. [*Id.*]

This is to say that the ALJ's assessment of Plaintiff's RFC, as reflected in his interrogatory to the VE, is supported by

12

substantial evidence, even considering (as the ALJ did) the findings of Dr. Spangler. Specifically, he asked the VE to assume that the claimant was:

> . . . of borderline intellectual functioning, but she retains the residual functional capacity to perform work that involves only routine, simple and non-detailed tasks; where public and co-worker contact is casual and infrequent; where supervision is direct and non-confrontational; and, where changes in the workforce are infrequent and gradually introduced.

[AR at 106-07.] In any event, the ALJ felt, and the Court agrees, that he "accommodated" her "fair" abilities assessed by the consulting psychologists and reported in the evidence of record in this matter.

Having reviewed the record of this matter, this Court finds that the ALJ's findings as to Plaintiff's mental RFC were supported by substantial evidence of record and that he did not, in turn, err in offering the hypothetical based upon that RFC to the VE. *See* 42 U.S.C. § 405(g), *Foster*, 279 F.3d at 353. The decision rendered by the ALJ and adopted by the Commissioner is affirmed.

**V.   CONCLUSION**

For the foregoing reasons, **IT IS ORDERED:**

(1) That the Commissioner's motion for summary judgment [Record No. 12] be, and the same hereby is, **GRANTED.**

(2) That the plaintiff's motion for summary judgment [Record

No. 11] be, and the same hereby is, **DENIED**.

This the 19th day of February, 2008.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge

14